THOMAS BERRY *vs.* STEPHEN G. COX, AND MARGARET, HIS WIFE.—*December*, 1849.

A married woman, without the knowledge, privity or consent of her husband, made a parol agreement with her brother to mortgage to him certain of her leasehold property, being induced to do so by the professions of her brother, that it was an arrangement to secure her a provision, in the event of her becoming a widow. HELD: that to grant an application by the brother, for the specific performance of such an agreement, would violate the principles of both law and equity.

Appeal from the *Court of Chancery.*

The bill in this case was originally filed in the equity side of Baltimore county court, on the 14th of January, 1843, by the appellant, against the appellee, *Margaret*, and her then husband, *Thomas Chester.*

It alleges, that said *Thomas* being indebted to complainant upon his promissory note for $355, dated 27th of July, 1840, payable in two years, with interest from date, to secure the same, executed a mortgage to complainant of certain lands lying in *Baltimore* county. That afterwards, to oblige said *Thomas*, and at his request, complainant agreed to release this mortgage, and receive, in lieu thereof, a mortgage from said *Margaret*, or from her and her husband, of certain property about to be conveyed to the former, by one *John Davidson.* That in pursuance of this agreement, complainant released the mortgage, and in consideration of this release, and to secure said note, said *Thomas* and *Margaret*, some time in the year 1841, executed a mortgage to complainant of certain leasehold property in the city of *Baltimore*, which had been conveyed to said *Margaret* by said *Davidson*, by deed dated 28th of May, 1841, which mortgage was defeasible upon payment of the said note. That by inadvertence, complainant neglected to have this mortgage recorded until more than six months had elapsed. That through the agency of his brother he left said mortgage with said *Margaret*, who was his sister, with a view to the execution, on her part, of another similar one, which

she had promised to do. The bill then charges, that said *Margaret* had refused to comply with this promise, and had destroyed said unrecorded mortgage, and has refused to execute another. The bill then sets up an equitable lien on said property, by reason of this unrecorded mortgage, and prays for an injunction restraining said *Margaret* and *Thomas* from disposing of the same, and that it may be sold to satisfy complainant's claim, and for general relief. The *note* and *deed* from *Davidson* to *Margaret Chester*, are filed with the bill, as exhibits A and B.

The answer of *Thomas Chester*, and *Margaret*, his wife, admits the execution of the mortgage of the lands in *Baltimore* county, but denies that it was executed to secure the payment of any sum justly due by them, or either of them, or that they, or either of them, were indebted on the promissory note mentioned in the bill, but aver, that both the note and mortgage were executed without any consideration therefor, at the instance of the plaintiff, and to gratify his view, which he urged and pressed upon these defendants, of providing, in case of defendant *Thomas'* death, some resource for the defendant, *Margaret;* said plaintiff recommending such an arrangement in consequence of defendant, *Thomas*, having no relatives. They deny that this mortgage was released under any agreement or understanding, that another mortgage should be executed of the leasehold property conveyed by *Davidson,* as charged in the bill. The answer also avers, that the defendant, *Margaret*, in her own name, and without the knowledge, or privity, or assent of her husband, executed to complainant, her brother, at his suggestion of the view above stated, in her sole name, a mortgage of said leasehold property, and to secure a sum of money, the amount of which she did not recollect, but which was not due either by her or her husband to plaintiff, but was merely nominal. That said *Thomas* never assented to this mortgage, and no other mortgage of said leasehold property was ever executed. That *Peter Berry*, the brother of complainant, and said *Margaret*, delivered this mortgage, which had never been recorded, to her as coming from the plaintiff,

with a declaration that it was of no importance, and was only a matter of form; and she denies that it was even delivered to her upon any assurance, promise or understanding from or with her, that she and her husband, or either of them, would exe-cute another mortgage of said property, and they also deny that any such promise or understanding was ever made.

A commission was then issued, under which testimony was taken, the effect of which is fully stated in the opinion. *Ex-hibit* M C, is the release by the complainant of the first mort-gage mentioned in the bill, and is dated 26th of May, 1841. *Thomas Chester* afterwards died, and the defendant having intermarried with the appellee, *Stephen G. Cox*, the cause was revived, the latter made defendant, and the suit removed to the court of chancery.

The chancellor (JOHNSON,) being of opinion that the evi-dence was not sufficient to overrule the answer and the release executed by the complainant, passed a decree, on the 26th of May, 1847, dismissing the bill, from which the complainant appealed.

The cause was argued before SPENCE, MAGRUDER, MAR-TIN, and FRICK, J.

By ROBT. J. BRENT, for the appellant, and
By MAYER, for the appellee.

SPENCE, J., delivered the opinion of this court.

After a careful examination of the bill, answers, evidence and arguments of the solicitors of the parties, we are satisfied the decree of the chancellor in this case is correct.

It may be conceded, that the answers in this case are not responsive to the bill, and that the averment of the answer, that "said mortgage was executed by them, (the respondents,) at the instance of said plaintiff, and to gratify his view which he urged and impressed upon these defendants, of providing in case of the defendant *Thomas'* death for the said *Margaret,* said plaintiff recommending such an arrangement in conse-

quence of the defendant *Thomas* having no relations," is matter in avoidance only, and yet, from an examination of the evidence, it is clear, that this entire negotiation has been conducted by the complainant and his agent on the one side, and the respondent, *Margaret*, and her agent or friend, *Walter*, on the other side; the avowed object being and the circumstances showing the purpose to be, to provide for the defendant *Margaret*, who is the sister of the complainant.

The witness, *Peter Berry*, who seems, from his testimony, to have participated largely in this transaction, says, that the money for which the note and mortgage on the lands in *Baltimore* county were given, was given by *Thomas Berry* to deponent, for his sister, *Margaret Chester*, requesting deponent to get some security for said sum, as well as for other money before that time loaned to the said *Margaret*.

The deponent *Berry* also states, that it was understood verbally at the time it was agreed the said mortgage was to be executed between the parties, that two years' credit was to be given for the repayment of the money, and that the complainant would not trouble the defendants for the payment of their debt at the expiration of said two years, in case they were not then able to pay the same. The mortgage spoken of in this answer, was the one of the lands in *Baltimore* county which was afterwards released by the mortgagee's deed.

This witness, in his answer to the third interrogatory, says, that the defendants, *Chester* and wife, had told him that they were about trading the land in *Baltimore* county for property in the city, and that they wished complainant to release his mortgage on the land in the county, and they would renew the mortgage on the property they were about to acquire in exchange; that the deponent communicated the wish of the defendants to the complainant, which he assented to.

*John Walter*, a witness examined on the part of the complainant, states, that he wrote the two letters, exhibits M C, No. 2, and M C, No. 3; that the release filed among the papers marked M C, was written by him at the instance of *Margaret Chester;* that he presumes it is the same paper which

was enclosed in deponent's letter of the 22nd of May, 1841, marked M C, No. 2; he further states, that he wrote the two letters, the first dated the 22nd May, 1841, the other 25th of May, 1841, exhibits M C, No. 2, and M C, No. 3, at the in-stance and with the knowledge of *Margaret Chester*.

The letters of the 22nd and 25th of May, were written by the witness *Walter*, at the instance of *M. Chester*, in the first of which was enclosed the deed of release of the mortgage of the land in *Baltimore* county, and which communicated to her brother her wish that he would execute it, as she was anxious to have the matter closed between her and the other party, to wit, *Davidson*. To the letter of the 22nd of May, from *Walter* to *Thomas Berry*, the letter in which the release was en-closed, is this striking postscript: "The expenses attending the execution of the writings, I presume, your sister did not think about, and when you get your writing, that matter can be at-tended to; this expense you have to pay for her in *Washington*."

The witness, *Peter Berry*, in his answer to the 4th inter-rogatory, deposeth, that the complainant handed to deponent a paper, purporting to be a mortgage upon property lying in the city of *Baltimore*, and requested deponent, who was com-ing to *Baltimore* from the *District of Columbia*, where com-plainant lived, to get him a renewal of said last mentioned mortgage deed, as the time had run out for recording the same, and complainant directed deponent to give up said last men-tioned deed to the defendant *Margaret* for that purpose; that when deponent reached *Baltimore*, he called on his sister *Margaret*, and asked her, in behalf of complainant, to execute a new mortgage and send it to complainant, which said *Margaret* said she would do. The deponent left the morgage with said *Margaret*, and he has not seen it since; that he afterwards called on *Margaret Chester* for the promised deed, but she refused to give the same. The witness *Berry* first said that *Thomas Chester's* name was signed to the deed de-livered to his sister *Margaret*, but afterwards, upon reflection, said he was not positive that *Thomas Chester's* name was signed to the deed. The witness *Berry* further stated in his

answer, that he "had no recollection of seeing *Thomas Chester* at any time stated in this answer."

This witness, *Berry*, says in his answer to the defendants' cross-interrogatory, that he did, he thinks, tell them that if they would give the mortgage, it would be saving so much to her if she lived after *Chester*, or something like that.

The conclusion from all this record is, that *Thomas Berry* loaned or gave to his sister a sum of money. That for her benefit, and to secure to her, in the event of her surviving her husband, that sum, he induced her and her husband to give him a mortgage on the lands in *Baltimore* county. That subsequently, *Chester* and wife wished to sell or exchange the land in *Baltimore* county, for leasehold property in the city of *Baltimore*. *Thomas Berry*, for the benefit of his sister, agreed with her to release his mortgage on the land in *Baltimore* county, to enable *Chester* and wife to sell the same or to exchange it, and that *Margaret Chester* should give the complainant a mortgage on the leasehold property, to be assigned or conveyed to her. This arrangement was carried into execution, *Thomas Berry* released his mortgage, the leasehold property in the city was conveyed to *Margaret Chester*, and she executed the mortgage on said property to her brother, the complainant, which he accepted. The complainant omitted or neglected to have this mortgage recorded according to law. About one year after this mortgage was executed by the respondent *Margaret*, the complainant sent it by his brother and witness, *Peter Berry*, to get her to renew it, and *Peter Berry* states that she said she would do so, but that she afterwards refused to renew said mortgage. The witness says, that at the interview with his sister, when she promised to renew the mortgage, her husband, *Thomas Chester*, was not present, and that he did not see him.

This then is the parol agreement which this bill asks a court of equity to decree shall be specifically performed. An agreement made with a married woman, without the knowledge, privity or consent of her husband, induced by professions of a brother, that it was to secure to her a provision in the event of

her becoming a widow.   We offer no argument for refusing such an application, because to grant it, would violate the principles of both law and equity.   The decree of the chancellor is affirmed, with costs.

DECREE AFFIRMED.